1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2

3  HALLIE HOFFMAN (CABN 210020)
   Chief, Criminal Division
4

5  SAILAJA M. PAIDIPATY (NYBN 5160007)
   Assistant United States Attorney

6      450 Golden Gate Avenue, Box 36055
7      San Francisco, California 94102-3495
       Telephone: (415) 436-7200
8      FAX: (415) 436-7234
       sailaja.paidipaty@usdoj.gov
9

10 Attorneys for United States of America

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14

15 UNITED STATES OF AMERICA,        )  **NO. 19-0131 WHO**
                                    )
16          Plaintiff,              )  **UNITED STATES' SENTENCING**
                                    )  **MEMORANDUM**
17      v.                          )
                                    )  Judge: Hon. William H. Orrick
18 NEVILLE ROEBUCK,                 )  Sentencing Date: August 27, 2020
                                    )  Time: 1:30 p.m.
19          Defendant.              )
                                    )
20 _____)

21 **I.    INTRODUCTION**

22        In January 2018, a probation officer and local authorities searched Neville Roebuck's home to

23 retrieve three firearms registered in his name.  They never recovered those guns.  Alarmingly, what they

24 did find were two homemade untraceable guns, parts for several other firearms, and hundreds of rounds

25 of ammunition.  Roebuck, who at the time was on probation for two prior felony convictions, made

26 untraceable firearms and told officers that he intended to sell them once he was off of probation.  When

27 asked about the guns registered in his name, Roebuck claimed that two were stolen and refused to tell

28

                              1

1   police where the third was located.  Following Roebuck's arrest, his mother found additional

2   ammunition and a firearm magazine in the glove box of her car, indicating that at least some of the

3   materials were taken out of the house.  Roebuck's actions were not those of a hobbyist or a hunter.  His

4   statements to police demonstrate that he knew what he was doing and that he had no intention of

5   stopping.  The seriousness and danger posed by this conduct cannot be underscored enough.  Homemade

6   unregistered guns present a significant danger to the community.

7           Following Roebuck's guilty pleas, this Court provided him with an opportunity by continuing

8   sentencing for a year, during which time the parties appeared for monthly status conferences.  The

9   government is heartened by Roebuck's success during this time; he complied with conditions of release,

10  maintained employment, and most notably achieved and maintains sobriety.

11          In considering an appropriate sentence, the Court must weigh Roebuck's laudable progress since

12  the time of his plea with the undeniably dangerous and reckless conduct.  As noted in the presentence

13  report, Roebuck previously served 14 months in state custody for the underlying offense conduct.  As set

14  forth below, the parties disagree regarding the applicable Guidelines calculation.  The government

15  agrees with the U.S. Probation Office's finding of an overall offense level of 19, and Criminal History

16  Category IV, resulting in an advisory Guidelines range of 46-57 months.  Because of the volume of

17  firearms at issue here, as well as the particular paraphernalia possessed by Roebuck, such as a flash

18  suppressor, the government believes an additional custodial term is warranted.  If, however, the Court

19  considers the imposition of a time served sentence, the government respectfully recommends the

20  maximum term of supervised release applicable – three years – with stringent conditions including drug

21  testing, counseling, and a fulsome search clause.

22  **II.      PROCEDURAL POSTURE**

23          Officers of the San Francisco Police Department (SFPD) arrested Roebuck on January 21, 2018

24  for violation of the terms of his probation and for new state firearms possession charges.  (Presentence

25  Report (PSR) ¶¶ 4, 6, 15.)  A federal grand jury returned the Indictment in this case on March 19, 2019.

26  Roebuck entered an open guilty plea on May 9, 2019.  (PSR ¶ 2.)  At that time, Roebuck sought

27  admission into the Conviction Alternatives Program (now the Alternatives to Incarceration Program).

28

2

UNITED STATES' SENTENCING MEMO.
NO. 19-0131 WHO

1    (*Id.*)  Following briefing and argument, the Court denied Roebuck's request, but deferred sentencing for

2    one year with monthly status conferences tracking Roebuck's progress on pre-trial release.  (*Id.*)  Upon

3    completion of the one-year post-plea period, the Court scheduled sentencing for August 13, 2020.  (*Id.*)

4    **III.    OVERVIEW OF OFFENSE CONDUCT**

5           The government agrees with the factual recitation in the Presentence Investigation Report

6    ("PSR") prepared by the U.S. Probation Office ("Probation") and encourages the Court to adopt it.  The

7    government's argument below focuses on key facts described in the PSR.

8    **IV.    SENTENCING GUIDELINES CALCULATIONS**

9           The government agrees with the U.S. Sentencing Guidelines (U.S.S.G.) calculation as

10   determined by Probation, finding that the adjusted offense level is 19, the applicable Criminal History

11   Category (CHC) is IV, resulting in an advisory Guidelines range of 46-57 months.  Applying U.S.S.G.

12   § 2K2.1(a)(4), Probation began its calculation at a base offense level 20, which applies to defendants

13   who committed the instant offense after sustaining a felony conviction for a "controlled substance

14   offense."[1]  As described in the PSR, in 2016, Roebuck was convicted of violating Cal. Health and Safety

15   Code Section 11738, Possession with Intent to Sell a Controlled Substance, specifically

16   methamphetamine, in the Superior Court for San Mateo County.  (PSR ¶ 35.)  Both Probation and the

17   government agree that the conviction is a "controlled substance offense" under the federal sentencing

18   guidelines.  Based on objections submitted in response to the preliminary PSR, the government

19   anticipates that Roebuck will argue for a lower base level offense, claiming that the 2016 conviction

20   does not satisfy the modified categorical approach and therefore is not a "controlled substances offense."

21   This argument should be rejected.  The case law upon which it relies is not binding on this Court, and

22   several district courts, including in the Central and Eastern Districts of California, as well as another

23   judge of this Court, recently have held that convictions under Cal. H&S § 11378 satisfy the modified

24   categorical test for the purposes of sentencing enhancements.

25

26          [1] "The term 'controlled substance offense' means an offense under federal or state law,
     punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import,
27   export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession
     of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export,
28   distribute, or dispense."  U.S.S.G. § 4B1.2(a)(b);  *see* U.S.S.G. § 2K2.1(a)(4)(A).

UNITED STATES' SENTENCING MEMO.
NO. 19-0131 WHO

Generally, in determining whether a state conviction serves as the predicate for a Guidelines enhancement, courts apply a three-step approach. *United States v. Martinez-Lopez*, 864 F.3d 1034, 1038 (9th Cir. 2018) (en banc).  First, a court determines whether the state law bars the same amount of conduct or less than the federal law.  *Id.*  If yes, then the state crime is a categorical match to the federal crime.  *Id.*  If there is no categorical match, courts then move to the second step of the analysis, which evaluates whether the state law is divisible.  *Id.*; *see also Medina-Lara v. Holder*, 771 F.3d 1106, 1112 (9th Cir. 2014).  If the statute is divisible, meaning that the statute sets out alternate elements constituting separate crimes, then the court moves to the final step, often referenced as the modified categorical approach.  *See Mathis v. United States*, 136 S.Ct. 2243, 2249 (2016).  The court looks to a limited set of documents from the defendant's state case to determine whether the conduct for which the defendant was charged and convicted falls within the scope of the federal offense.  *Id.* (citing *United States v. Shepard*, 544 U.S. 13, 26 (2005)).

Under Ninth Circuit precedent, Cal. H&S § 11378, which criminalizes possession of a controlled substance for sale, is not a categorical match to the federal equivalent because the state's list of what qualifies as a "controlled substance" differs from the federal list.  *See United States v. Valdavinos-Torres,* 704 F.3d 679, 684, 687 (9th Cir. 2012).  However, the statute is divisible, and applying the modified categorical approach, courts review judicial documents from the underlying state conviction to determine whether the controlled substance for which the defendant was convicted in the state system is criminalized under federal law.  *Id.* at 687; *United States v. Ocampo-Estrada*, 873 F.3d 661, 668 (9th Cir. 2017).  In the case of Roebuck, the felony Information to which he entered a nolo contendere plea specifies that he was prosecuted for possessing methamphetamine with the intent to sell it.  *See* Declaration of Sailaja M. Paidipaty ("Paidipaty Decl."), Ex. A, Felony Information at 1 ("On or about October 17, 2015, in the Country of San Mateo, State of California, the crime of Possession For Sale of a Controlled Substance in violation of HS11378, a Felony, was committed in that NEVILLE WYATT ROEBUCK did unlawfully possess for purpose of sale a controlled substance, *to wit, methamphetamine*) (emphasis added).  Roebuck's application for entry of plea and the Superior Court's minutes show that he was convicted of Count 1 of the Information, which was the only count charging a violation of

UNITED STATES' SENTENCING MEMO.
NO. 19-0131 WHO

§ 11378.  Paidipaty Decl, Ex. B, Entry of Plea Form; Ex. C, Superior Court, San Mateo County Court Minutes.  Applying the modified categorical approach, Roebuck was convicted of trafficking methamphetamine, which qualifies as a "controlled substance offense" under federal law.  *See Valdavinos-Torres,* 704 F.3d at 687-89 (finding that in applying the modified categorical approach, a court can consider allegations in a charging document along with other materials such as court minutes or abstracts of judgment).

Defense's argument will likely rely upon the Ninth Circuit's withdrawn opinion in *Lorenzo v. Sessions*, 902 F.3d 930 (9th Cir. 2018) (*Lorenzo I*), *withdrawn sub nom. Lorenzo v. Whitaker*, 752 Fed.Appx. 482 (9th Cir. 2019) (unpublished), and its subsequent opinion, *Lorenzo v. Whitaker*, 752 Fed.Appx. 482 (9th Cir. 2019) (unpublished) (*Lorenzo II*).  Understanding the unique procedural history of *Lorenzo I, Lorenzo II*, and cases that have addressed the issue afterwards is fundamental to this Court's analysis, and, therefore, the government briefly recounts the evolution of the case law here.

In *Lorenzo I*, the Ninth Circuit held that "the California definition of methamphetamine is broader than the federal definition."  *Lorenzo I*, 902 F.3d at 935-36.  This conclusion turned on a textual analysis finding that California's definition of "methamphetamine" includes both optical and geometric isomers, while the federal definition only includes optical isomers.  *Id.*  Following the issuance of *Lorenzo I*, the government sought rehearing en banc arguing that the difference in the definitions is irrelevant because scientifically, geometric isomers of methamphetamine do not exist.  *Lorenzo II*, 752 Fed.Appx. at 485.  Because no prior factual record had been developed on this point, the Ninth Circuit denied rehearing and found that the government failed to timely raise the argument.  *Id.*  However, it simultaneously withdrew *Lorenzo I* from publication and noted that the government could develop its argument in a future case.  *Id.*

Subsequently, when a similar question arose in *United States v. Rodriguez Gamboa*, 946 F. 3d 548, 553 (9th Cir. 2019), the Ninth Circuit remanded to the District Court to address the "factual issue of whether geometric isomers of methamphetamine exist."  *Id.*  On remand the District Court for the Central District of California reviewed extensive briefing by the parties, including three expert declarations submitted by the government, all of which concluded that geometric isomers of

UNITED STATES' SENTENCING MEMO.
NO. 19-0131 WHO

5

1  methamphetamine do not exist.  *See United States v. Rodriguez Gamboa*, No. CR 18-00379-ODW (C.D.

2  Cal.); Paidipaty Decl., Ex. D, Declaration of Brian M. Stoltz; Exh. E, Declaration of Daniel Willenbring,

3  Ex. F, Declaration of Travis Williams.  Further, the Court held an evidentiary hearing where each of the

4  three experts testified.  Paidipaty Decl., Ex. G, Transcript of Evidentiary Hearing.  The Court found each

5  of the experts "credible and compelling."  *United States v. Rodriguez Gamboa*, --F.Supp.3d--, 2020 WL

6  1873545, at *3 (C.D. Cal. Apr. 15, 2020).  The Court noted that the experts "possessed superior

7  education and experience in organic chemistry to lend gravitas to their opinions."  *Id.*  Ultimately, the

8  Court concluded that while the texts of the state and federal statutes reflect a mismatch, the evidence put

9  forward by the government demonstrated that there is no realistic probability that a defendant would be

10 punished for possession with intent to sell a geometric isomer of methamphetamine.  *Id.* at *5.

11 Therefore, in this context, a defendant could not be punished for a crime under state law that does not

12 fall within the scope of the equivalent federal offense.

13       The District Court for the Eastern District of California relied on the evidence and conclusions in

14 *Rodriguez Gamboa* when faced with the same issue.  *United States v. Ontiveros*, No. 2:18-cr-00175-

15 TLN, 2020 WL 2468471, at *4 (E.D. Cal. May 13, 2020).  In moving to dismiss an indictment charging

16 illegal re-entry, the defendant in *Ontiveros* argued that Cal. H&S § 11378 was facially overbroad, and,

17 therefore his state conviction did not support the predicate necessary for removal.  *Id.* at *2.  The

18 government submitted the transcript of the evidentiary hearing in *Rodriguez Gamboa*, as well as two

19 expert declarations (one from an expert who testified in *Rodriguez Gamboa*) asserting that geometric

20 isomers of methamphetamine do not exist.  *Id.* at *4.  The Court in *Ontiveros* noted that based on the

21 evidence, citing findings in *Rodriguez Gamboa* and the additional declaration submitted by government,

22 geometric isomers of methamphetamine do not exist.  *Id.* at *6.  Therefore, "there is no realistic

23 probability that California would apply its statute more broadly than the federal statute."  *Id.*

24       Most recently, the Honorable Jeffrey S. White, rejected a defendant's statutory argument that

25 Cal. H&S § 11378 is overbroad.  *United States v. Espinoza*, No 19-098 JSW, Order at 4 (for the Court's

26 convenience, a copy of the order in *Espinoza* is attached to the Paidipaty Decl. at Ex. H.)  Indeed, Judge

27 White found that § 11378 is not even facially overbroad.  *Id.* at 4.  In doing so, Judge White accepted the

28

6

UNITED STATES' SENTENCING MEMO.
NO. 19-0131 WHO

1   government's argument that California's definition of "methamphetamine, its salts, isomers, and salts of

2   isomers" is limited to isomers that actually exist.  *Id.*  While the California defines isomer as both optical

3   and geometric, that definition is a generic one that applies to a long list of controlled substances.  *Id.*

4   California statute further notes that the statutory definition governs only "[u]nless the context otherwise

5   requires[.]"  *Id.*; *see* CAL. H&S §§ 11001, 11033.  Judge White agreed with the government that with

6   respect to methamphetamine, the real world context limits the definition of isomer and does not include

7   an isomer that is an impossibility.  *United States v. Espinoza*, No 19-098 JSW, Order at 4.

8        At the heart of this inquiry is the fundamental question of whether a defendant can be convicted

9   of a crime under state law that does not fall within the ambit of the federal offense.  In short, can a

10  defendant be convicted under California law for possessing with intent to sell a geometric isomer of

11  methamphetamine, which is not defined as a crime under federal law?  Based on the scientific evidence

12  put forth in *Rodriguez Gamboa* and *Ontiveros*, the clear answer is no.  Further, both the court in

13  *Ontiveros* and *Espinoza* declined defendant's request for an evidentiary hearing, finding that defendant

14  failed to make even a basic showing that a factual issue was in dispute.  *Ontiveros*, 2020 WL 2468471,

15  at *5, n.3; *Espinoza*, No 19-098 JSW, Order at 5.  The government urges this Court to adopt the findings

16  in *Rodriguez Gamboa*, *Ontiveros*, and *Espinoza*.  Fundamentally, Roebuck cannot establish that there is

17  a reasonable probability that he could have been convicted of a methamphetamine trafficking crime that

18  is not punished under federal law.  His 2016 conviction under Cal. H&S § 11378 is a "controlled

19  substances offense" as defined in U.S.S.G. § 2K2.1, and this Court should find that the appropriate base

20  level offense is 20.

21  **V.   GOVERNMENT'S SENTENCING RECOMMENDATION**

22       The Court should impose a sentence sufficient, but not greater than necessary, to reflect the

23  purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520

24  F.3d 984, 991 (9th Cir. 2008).  The Court should begin by calculating the correct sentencing range under

25  the Sentencing Guidelines.  *Id.*  The Guidelines are "the 'starting point and the initial benchmark,'"

26  *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (quoting *United States v. Kimbrough*, 552 U.S.

27  85, 108 (2007)), and the Court should "remain cognizant of them throughout the sentencing process."

28

UNITED STATES' SENTENCING MEMO.
NO. 19-0131 WHO

Case 3:19-cr-00131-WHO   Document 41   Filed 08/20/20   Page 8 of 9

1   *United States v. Gall*, 552 U.S. 38, 50 n.6 (2007).  After determining the appropriate Guidelines

2   calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the

3   factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991-93.  Here, the most important considerations

4   are the nature and circumstances of the offense, the need to afford adequate deterrence, and the

5   protection of the public.  18 U.S.C. § 3553(a)(1), (a)(2)(B)-(C).

6         The crime here is straightforward – Roebuck illegally built untraceable guns.  Commonly known

7   as "ghost guns," Roebuck had kits where with a little bit of drilling and assembly, he could put together

8   a homemade firearm.  (PSR ¶¶ 9, 12, 13.)  By the time of his arrest, he already had made two operable

9   guns and had parts for several more.  (PSR ¶ 14.)  Taking to homemade guns was no accident for

10  Roebuck.  Having been convicted of multiple felonies, Roebuck could not legally possess a firearm and

11  could not pass a background check to legally purchase a traceable gun with a serial number.  Making

12  guns by buying the constituent parts was his attempt, though unsuccessful, around the law.  In addition

13  to the homemade firearms, Roebuck possessed hundreds of rounds of ammunition, some of which his

14  mother found in her car after her son's arrest, and firearms accessories such as a flash suppressor.  (PSR

15  ¶ 12.)

16        Of particular concern officers never recovered the guns registered in Roebuck's name.  (PSR

17  ¶ 12.)  Roebuck claimed two of the firearms were stolen when his car was stolen years prior (PSR ¶ 11.)

18  Roebuck acknowledged to officers that he knew where the lower receiver of the third gun was, but

19  refused to identify that location.  (*Id.*)  Strikingly, he told officers that they did not need to know where

20  the receiver was, but claimed it was "not on the street."  (*Id.*)

21        Roebuck's reckless possession of firearms predates this conviction.  In 2015, officers of the San

22  Mateo Police Department pulled over Roebuck's car as it veered between lanes at 3:00 a.m.  (PSR ¶ 35.)

23  Roebuck appeared to be under the influence.  (*Id.*)  Officers found a loaded gun with the serial number

24  filed off, a box of ammunition, loose ammunition, and a lower receiver for a gun with no serial number.

25  (*Id.*)  In addition, officers recovered marijuana, a meth pipe, and a small amount of heroin.  (*Id.*)

26        Unregistered, untraceable firearms pose a serious risk to the community.  Recently, law

27  enforcement has seen an uptick in the possession and use of these firearms.  Last year, the Special Agent

28

8

UNITED STATES' SENTENCING MEMO.
NO. 19-0131 WHO

in Charge of the Sacramento office of the Bureau of Alcohol, Tobacco, and Firearms reported that approximately 30% of firearms seized by the agency were "ghost guns."  Sterling, Abigail, and Martin, Allen.  "California Takes Steps to Force Registration of Homemade 'Ghost Guns'" CBS SF BAY AREA. (Nov. 1, 2019), available at https://sanfrancisco.cbslocal.com/2019/11/21/registration-ghost-gun-california, last accessed Aug. 20, 2020.  Roebuck's actions endangered himself, his family, and the community.

The government recognizes that this case does not begin and end with the offense conduct alone. Following his guilty plea in this case, Roebuck worked towards demonstrating that he can abide by the law and specific conditions of release.  This took him from his detention at a halfway house, to home confinement on electronic monitoring, to the removal of monitoring.  Throughout that period, he remained employed and maintained sobriety.  In considering the factors under 18 U.S.C. § 3553(a), the government credits Roebuck for his progress.

Weighing the offense with Roebuck's post-plea conduct, the government recommends the Court impose a custodial term.  This recommendation is driven in large part by the sheer number of firearms parts and ammunition possessed, Roebuck's refusal to inform officers of location of one of the guns registered in his name, and his prior conviction for possessing illegal firearms.  Should the Court vary downwards, however, the government seeks the imposition of the maximum term of supervised release allowed by statute, which is three years, along with continued drug and mental health counsel, and a fulsome search clause.

## VI.    CONCLUSION

The government respectfully recommends that the Court sentence Roebuck to a term in custody, followed by three years of supervised release, a $100 special assessment, and order forfeiture of all the firearms, firearm parts, and ammunition seized from his residence on January 30, 2018.

DATED:  August 20, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

_____/s_____
SAILAJA M. PAIDIPATY
Assistant United States Attorney

UNITED STATES' SENTENCING MEMO.
NO. 19-0131 WHO